UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BRITAX CHILD SAFETY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 17-cv-2724 |
| | : | |
| | : | |
| NUNA INTERNATIONAL B.V. and | : | |
| NUNA BABY ESSENTIALS, INC., | : | |
| Defendants. | : | |
| | : | |

**O P I N I O N**
**Decision on the parties' respective motions for claim construction, ECF Nos. 69 & 70**

**Joseph F. Leeson, Jr.**                                          **December 23, 2019**
**United States District Judge**

## I.     INTRODUCTION

In this patent infringement case, Plaintiff Britax Child Safety, Inc., alleges that

Defendants Nuna International B.V. and Nuna Baby Essentials ("B.E."), Inc. (collectively,

"Nuna"), infringed two of its patents for a specific design of a child car seat. Those patents—

U.S. Patent No. 9,499,074 and U.S. Patent No. 9,586,504—relate specifically to a child car seat

with a "tensioning mechanism" for applying tension to a seat belt to more easily secure the seat

within a vehicle in either a forward or rearward facing position.[1] Presently before the Court are

the parties' respective motions for the construction of several claim terms within the two patents

pursuant to the Supreme Court's decision in *Markman v. Westview Instruments, Inc.*, 517 U.S.

370 (1996). Following a hearing on the motion, and for the reasons set forth below, the Court

adopts the claim construction arguments of Britax and rejects those of Nuna.

---

[1]        Patent No. 9,586,504 is a continuation of Patent No. 9,499,074.

## II.     BACKGROUND

### A.     The Alleged Infringement

The following facts are drawn from Britax's Amended Complaint, ECF No. 23, which remains the operative pleading in this case. Britax Child Safety, Inc. is both incorporated and principally operated in South Carolina, and "designs, develops, tests, and builds . . . industry-leading child safety restraints, including its child safety car seats." Am. Compl. ¶ 11. Defendant Nuna B.V. is incorporated and principally operated in the Netherlands. *Id.* ¶ 3. Defendant Nuna B.E., which is incorporated and principally operated in Pennsylvania, is a wholly-owned subsidiary of Nuna B.V. *Id.* ¶ 4. Similar to Britax, Nuna B.V. and Nuna B.E. focus on researching and developing child safety technologies and producing child safety products. *Id.* ¶ 7.

Britax alleges that Nuna has violated 35 U.S.C. § 271(a) by infringing two of its patents: United States Patent No. 9,499,074, issued November 22, 2016, and United States Patent No. 9,586,504, issued March 7, 2017. Am. Compl. ¶¶ 14-15. Both patents are entitled "Forward and Rearward Facing Child Seat with Belt Tensioning Mechanism for Improved Installation." *Id.* ¶¶ 14-15. The two patents "relate[ ] to a child safety seat that may be used in either a forward or rearward facing orientation and includes a tensioning mechanism to more fully secure the child safety seat to a vehicle seat, thereby allowing for ease in installation of the child safety seat." *Id.* ¶ 16.

In its Amended Complaint, Britax alleges that Nuna's child car seat the Nuna RAVA™ infringes on at least claim 13 of the '504 patent, and at least claim 1 of the '074 patent, in the manner in which it secures itself to the seatbelt. *See* Am. Compl. ¶¶ 17-18, 36-51. In a "Supplemental Disclosure on Infringement Contentions," submitted with its responsive claim

construction brief, Britax submits more specific allegations of infringement. Specifically, "Britax asserts that [Nuna] infringe[d] claims 1-15 of U.S. Patent No. 9,568,504 . . . and claims 1-3, 5-7, and 16 of U.S. Patent No. 9,499,074." ECF No. 77-7 at 1. Britax further asserts that this infringement is manifest in two Nuna products: the Nuna RAVA™ car seat and the Nuna EXEC™ car seat. *Id.*

## B. Procedural Background

The initial complaint in this matter was filed on June 16, 2017. *See* ECF No. 1. Nuna filed a motion to dismiss on October 20, 2017, *see* ECF No. 12, which was deemed moot after Britax filed an Amended Complaint on November 3, 2017, *see* ECF No. 23. On November 17, 2017, Nuna filed a motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). *See* ECF No. 26. In an Opinion dated July 26, 2018, this Court denied the Rule 12(b)(2) motion without prejudice to allow the parties to conduct jurisdictional discovery and denied the Rule 12(b)(6) motion outright, finding that Britax had stated a claim of patent infringement. *See* ECF No. 33.

Nuna B.V. and Nuna B.E. filed their Answers on September 7, 2018, *see* ECF Nos. 35 and 36, respectively, with Nuna B.E.'s Answer asserting counterclaims for declaratory judgment of non-infringement and invalidity of Britax's patents. The Court held a Rule 16 conference on October 10, 2018. *See* ECF Nos. 40-41.

On October 31, 2018, Nuna filed a motion to stay this case pending *inter partes* review, [2] *see* ECF Nos. 43, which Britax opposed, *see* ECF Nos. 44. Nuna's petition for *inter partes*

---

[2] *Inter partes* review is a trial-like proceeding conducted before the Patent Trial and Appeal Board under 35 U.S.C. § 314, whereby a third party challenges the patentability of one or more claims in a patent. The grounds for challenge are limited to the patentability of the claim under 35 U.S.C. § 102 (which requires patent claims to be novel) and 35 U.S.C. § 103 (which

review of the '504 patent was subsequently dismissed by the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office ("the Board") on timeliness grounds. *See* ECF No. 48. On April 4, 2019, the Board issued a decision as to Nuna's petition for review of the '074 patent. The Board concluded that Nuna had "not demonstrated a reasonable likelihood of showing any challenged claim of the '074 patent is unpatentable," ECF No. 50 at 24, and denied *inter partes* review as a result. Nuna thereafter withdrew its motion to stay this case. *See* ECF No. 53.

The parties' opening claim construction briefs were filed on October 10, 2019, *see* ECF Nos. 69, 70, and their responsive claim construction briefs were filed on October 31, 2019, *see* ECF Nos. 76, 77. On November 12, 2019, counsel for both sides appeared before the Court for a hearing to address the parties' respective claim construction arguments.[3] The hearing concluded the same day. The Court reserved decision on the pending motions, as well as to several objections raised to certain exhibits.

## III. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

"[A] patent claim is that 'portion of the patent document that defines the scope of the patentee's rights.'" *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)). In its decision in *Markman*, the Supreme Court affirmed that "the construction of a patent, including terms of art within its claim," is not a question for a jury but "exclusively" for "the court" to determine as a matter of law. 517 U.S. at 372. This makes sense in light of the purpose of claim construction, which "is

---

requires patent claims to be nonobvious). *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2149 (2016).

[3] As the Court informed counsel at the hearing, all of counsels' presentations—both as to legal argument as well as to the technical background of the patents and the alleged infringement—were particularly well executed and helpful to the Court in its resolution of these issues.

to determin[e] the meaning and scope of the patent claims asserted to be infringed," such that the jury may then resolve the underlying question of infringement.[4]  *CANVS Corp. v. United States*, 126 Fed. Cl. 106, 112 (2016) (quoting *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)).

When a court is presented with a purported dispute as to the meaning and scope of patent claim terms, the threshold question must be whether claim construction is truly necessary.  As the Federal Circuit made clear shortly after the Supreme Court's decision in *Markman* was issued, that decision "do[es] not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Rather, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and *when necessary* to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."[5]  *Id*. (emphasis added); *see Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011) ("It is well settled that the role of a district court in construing claims is not to redefine claim recitations or to read limitations into the claims to obviate factual questions of infringement and validity but rather to give meaning to the limitations actually contained in the claims . . . .").  Therefore, a district court must engage in

---

[4]     A district court faced with a patent infringement suit engages in a two-step analysis, the first step of which is claim construction—a question of law—and second, comparing the accused device to the patent claims—a question of fact for the jury.  *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358 (Fed. Cir. 2006).  The instant inquiry is concerned only with the first step.

[5]     The Federal Circuit in *U.S. Surgical Corp.*, which was reviewing a judgment pursuant to a jury verdict finding patents invalid for obviousness, went on explain that "[a]lthough claim construction may occasionally be necessary in obviousness determinations, when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution in order to determine obviousness, in this case none of these rejected instructions was directed to, or has been shown reasonably to affect, the determination of obviousness."  *Id.*

claim construction where there is a *genuine* dispute as to the scope of claim language. *See O2 Micro Int'l Ltd.*, 521 F.3d at 1360 ("When the parties raise an *actual* dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.") (emphasis added); *cf. Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (affirming the district court's declination to give a claim term any construction).

Determining whether there exists a genuine dispute as to the scope of a claim term must be resolved by first considering the "ordinary and customary meaning" of the term. *FenF, LLC v. SmartThingz, Inc.*, 601 F. App'x 950, 952 (Fed. Cir. 2015). The "ordinary and customary meaning" is "the meaning that the term would have to a person of ordinary skill in the art when read in the context of the entire patent."[6] *Id.*; *Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.,* 222 F.3d 951, 955 (Fed. Cir. 2000) ("As a starting point, the court gives claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art."). If the ordinary meaning of a term is readily apparent, construction of the claim term beyond the ordinary meaning may not be necessary. *See CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, No. CV 12-1701, 2014 WL 7205657, at *9 (D. Del. Dec. 17, 2014) (finding no construction to be necessary where a claim term "uses ordinary English words, which may be given their plain and ordinary meaning"); *Vapor Point LLC v. Moorhead*, No. 4:11-CV-4639, 2013 WL 11275459, at *24 (S.D. Tex. Dec. 18, 2013) ("In cases where the ordinary meaning of the claim term is readily apparent even to a lay judge, the court need not go further into intrinsic or extrinsic evidence." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005))).

---

[6]     Nuna claims "a person of ordinary skill in the art" would have an undergraduate degree in mechanical engineering or a similar technical field, and at least two years of relevant work experience with child seats. *See* Nuna Moving Brief at 8, ECF No. 69. It is not clear to the extent to which Britax agrees with this claim.

On the other hand, a "determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *NobelBiz, Inc. v. Glob. Connect, L.L.C.*, 701 F. App'x 994, 997 (Fed. Cir. 2017) (quoting *O2 Micro Int'l Ltd.*, 521 F.3d at 1361). Where claim construction is determined to be necessary, the court must abide by the same standard in construing the disputed claim term as in determining whether construction is necessary in the first place: the disputed term must be given its ordinary and customary meaning, that is, the meaning the term would have to a person of ordinary skill in the art who has read the entire patent at the time of the invention.[7] *See NTP, Inc. v. Research In Motion, Ltd.*, 392 F.3d 1336, 1346 (Fed. Cir. 2004) (noting that generally, there is a presumption that the words of a claim will receive the full breadth of their ordinary meaning).

In construing a claim term, the Court must look first to evidence in the intrinsic record, which includes the language of the claims of the alleged-infringed patent and the patent's

---

[7] "Because the patentee is required to define precisely what his invention is . . . it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotation marks omitted). The presumption of ordinary meaning may be rebutted, however, if the patentee has acted as his or her own lexicographer by setting forth a definition of the claim term which differs from its ordinary and customary meaning. *BrookhillWilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298-99 (Fed. Cir. 2003). Any intent by the patentee to redefine a term must be expressed in the written description and must be sufficiently clear. *Merck & Co, Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005). When a patent applicant specifically defines a claim term in its description of its invention, that definition controls. *Phillips*, 415 F.3d at 1316.

specification.[8; 9]  *Phillips*, 415 F.3d at 1314-17; *Housey Pharm., Inc. v. Astrazeneca UK Ltd.*, 366 F.3d 1348, 1351-52 (Fed. Cir. 2004) ("Claim construction begins with the language of the claims."); *see Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc) ("Claims must be read in view of the specification, of which they are a part."), *aff'd,* 517 U.S. 370 (1996).  Indeed, the patent specification is "always highly relevant to the claim construction analysis.  Usually it is dispositive."  *Phillips*, 415 F.3d at 1315.  A proper claim construction analysis may also consider the history of the patent application in the Patent Office, *i.e.*, the prosecution history, which constitutes another form of intrinsic evidence.  *Id.* at 1317.  This consists of the record of proceedings before the Patent Office and includes prior art cited during examination.  *Id.*  It can show how the Patent Office and patent applicant understood the claims.[10]  *Id.*

Only after considering the intrinsic evidence and only where an ambiguity persists should courts turn to extrinsic evidence.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583

---

[8]     A patent "specification" is statutorily defined as a written description of the invention, the preferred embodiment of the invention, and how to make and use the invention.  *See* 35 U.S.C. § 112(a).  The content of the specification "conclude[s] with one or more claims particularly point out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."  35 U.S.C. § 112(b).  Patent "claims" then are properly understood as part and parcel of a patent's "specification."  *See, e.g.*, *Markman*,52 F.3d at 979 ("Claims must be read in view of the specification, of which they are a part.").  However, the "specification" is sometimes understood as the content of the patent preceding the patent "claims."  This is the understanding the Court adopts when "specification" and "claim" are referred to separately in this Opinion.

[9]     Because the '504 patent is a continuation of the '074 patent and the two patents share the same specification (but not claim) language, the Court refers to only a single "specification." *See Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 283 n.34 (D. Del. 2013) ("A continuation application is filed to pursue additional claims to an invention disclosed in an earlier application (the parent application) that has not yet been issued or is abandoned. The continuation application uses the same specification as the pending parent application, and the applicant may not add additional disclosure to the specification").

[10]    This, however, is the least probative form of intrinsic evidence because it "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation."  *Phillips*, 415 F.3d at 1317.

(Fed. Cir. 1996) ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence.").  In general, extrinsic evidence is deemed less reliable than intrinsic evidence, although courts are authorized to consider it "in the context of intrinsic evidence."  *Phillips*, 415 F.3d at 1319.  Extrinsic evidence may not, however, be used to contradict or override intrinsic evidence.  *Vitronics Corp.* 90 F.3d at 1584 (explaining that "extrinsic evidence in general, and expert testimony in particular, may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language[, n]or may it contradict the import of other parts of the specification").

Ultimately, during claim construction, "[t]he sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law."  *Phillips*, 415 F.3d at 303.

## IV.      OVERVIEW OF CLAIM TERMS IN DISPUTE

The parties agree on the proper construction of one claim term and dispute the proper construction of twelve others in Britax's two patents.  Before addressing in detail the parties' contentions as to each claim term, the Court summarizes in the chart below the at-issue terms and where they appear within each patent, as well as each side's proposal as to the proper construction of each.

| Claim Term | Nuna's Proposal | Britax's Proposal |
|---|---|---|
| "sitting surface" <br><br> ['074 patent, claims 1, 16] | "a surface upon which to rest on the buttocks or haunches" | Same as Nuna's |
| "tensioning mechanism" <br><br> ['074 patent, claims 1, 16; '504 patent, claims 1, 5, 9] | "a unitary tensioning mechanism" | No construction needed |
| "proximal end" <br><br> ['074 patent, claims 1, 16] | "end of the unitary tensioning mechanism opposite to the distal end" | "end of the tensioning mechanism opposite to the distal end" |
| "distal end" <br><br> ['074 patent, claims 1, 16] | "end of the unitary tensioning mechanism opposite to the proximal end" | "end of the tensioning mechanism opposite to the proximal end" |
| "pivot structure" <br><br> ['504 patent, claim 13] | "a unitary structure that pivots about an axis, including a first pivot portion and a second pivot portion" | No construction needed |
| "substantially adjacent" <br><br> ['074 patent, claims 1, 16; '504 patent, claims 1, 5, 9, 13] | Indefinite | No construction needed |
| "proximate an intersection of the backrest portion and seat portion" <br><br> ['074 patent, claim 7] | Indefinite | No construction needed |
| "proximate an intermediate region of the seat portion" <br><br> ['074 patent, claim 6] | Indefinite | No construction needed |

| | | |
|---|---|---|
| "generally at a middle of the seat portion in a forward and rearward direction"<br><br>['504 patent, claims 1, 5, 9, 13] | Indefinite | No construction needed |
| "generally at an intersection of the seat and backrest portions"<br><br>['504 patent, claims 1, 5, 9, 13] | Indefinite | No construction needed |
| "proximate to the second belt path"<br><br>['504 patent, claim 13] | Indefinite | No construction needed |
| "proximate to the first belt path"<br><br>['504 patent, claim 13] | Indefinite | No construction needed |
| "proximate to the seat portion"<br><br>['504 patent, claim 13] | Indefinite | No construction needed |

## V.     INDIVIDUAL CONSTRUCTION OF DISPUTED TERMS[11]

### A.     Claim term:  "tensioning mechanism"

The term "tensioning mechanism" is used in the following manner in the patent claims

identified by the parties:[12]

'074 patent, claim 1:

What is claimed is:  (1) A child seat configured to be secured to a vehicle seat in both a rear-facing and front-facing orientation, the child seat comprising: . . . a **tensioning mechanism** having a proximal end pivotally attached to the backrest portion of the seat base and a distal end comprising a sitting surface for an occupant of the child seat and an engaging surface facing opposite to the sitting surface, wherein the **tensioning mechanism** is movable downwardly and forwardly to a first position substantially adjacent to the seat base and upwardly and rearwardly to a second position displaced therefrom, wherein placing the **tensioning mechanism** in the second position allows the seat base to receive the belt, and movement of the **tensioning mechanism** from the second position to the first position presses the belt against the first and second edges and deflects a portion of the belt between first and second edges to be closer to the seat or backrest portion than portions of the belt that engage the first and second edges and thus applies tension to the belt to secure the child seat to the vehicle seat in a tensioned configuration, wherein the seat base of the child seat is configured to receive the belt when the seat base is in both a rear facing orientation and when the seat base is in a front-facing orientation.

'074 patent, claim 16:

What is claimed is:  (16) A method for manufacturing a child seat configured to be secured to a vehicle seat in both a rear-facing orientation and a front-facing orientation, the method comprising: . . . attaching a proximal end of a **tensioning mechanism** the backrest portion of to [sic] the seat base, wherein a distal end of the **tensioning mechanism** comprises a sitting surface for an occupant of the child seat and an engaging surface facing opposite to the sitting surface, wherein the **tensioning mechanism** is rotatable downwardly and forwardly to a first position substantially adjacent to the seat base and upwardly and rearwardly to a second position displaced therefrom, wherein placing the **tensioning mechanism** in the second position allows the seat base to receive the belt, and the movement of the **tensioning mechanism** from the second position to the first position presses the

---

[11]     Because both Britax and Nuna agree that the proper construction of the claim term "sitting surface" is "a surface upon which to rest on the buttocks or haunches," Nuna Moving Brief at 10; Britax Moving Brief at 26, ECF No. 70-1, the Court adopts this agreed-upon construction.

[12]     Although the term "tensioning mechanism" appears in other claims in both patents, the parties single out only these claims for analysis.

belt against the first and second edges and deflects a portion of the belt between first and second edges to be closer to the seat or backrest portion than portions of the belt that engage the first and second edges and thus applies tension to the belt to secure the child seat to the vehicle seat in a tensioned configuration, wherein the seat base of the child seat is configured to receive the belt in both a rear-facing and front-facing orientation.

'504 patent, claim 1:

What is claimed is: (1) A child seat configured to be secured to a vehicle seat in both a rear-facing and a forward-facing orientation by a belt of the vehicle seat, the child seat comprising: . . . a **tensioning mechanism** attached to the seat base to be movable between a first position and a second position, the **tensioning mechanism** having an end attached to the backrest portion at an axis such that the **tensioning mechanism** rotates between the first position and the second position pivotally about the axis, and wherein the **tensioning mechanism** has a first lateral edge surface and a second lateral edge surface, the first and second lateral edge surfaces extending along respective sides of the **tensioning mechanism** from and transverse to the axis, wherein in the first position, the **tensioning mechanism** is substantially adjacent to the seat base, and wherein in the second position, the **tensioning mechanism** is at least partly displaced from the seat base in order to enable at least one of the first belt path or the second belt path to receive the belt, wherein the first belt path is configured to allow a user to position the belt to be displaced by the first and second lateral edge surfaces relative to the first and second lateral edges to secure the child seat to the vehicle seat when the child seat is in the rear-facing orientation, wherein the second belt path is configured to allow the user to position the belt to be displaced by the first and second lateral edge surfaces relative to the first and second lateral edges to secure the child seat to the vehicle seat when the child seat is in the forward-facing orientation, and wherein in each of the forward or rear-facing orientations, the first and second lateral edge surfaces of respective different portions of the **tensioning mechanism** displace the belt to apply tension to the belt.

'504 patent, claim 5:

What is claimed is: (5) A child seat configured to be secured to a vehicle seat in a rear-facing orientation in which an occupant of the child seat faces toward a backrest of the vehicle seat and a forward-facing orientation in which an occupant of the child seat faces away from the vehicle backrest, where the vehicle seat has a vehicle belt having a lap portion and a shoulder portion, the child seat comprising: . . . a **tensioning mechanism** attached to the seat base to be movable between a first position and a second position, the **tensioning mechanism** having an end attached to the backrest portion at an axis such that the **tensioning mechanism** is rotatable between the first position and the second position pivotally about the axis, and wherein the **tensioning mechanism** has a first rigid edge surface and a second rigid edge surface, the first and second rigid edge surfaces extending along respective

sides of the **tensioning mechanism** from and transverse to the axis, wherein in the first position, the first and second rigid edge surfaces are substantially adjacent to the seat base, and wherein in the second position, the first and second rigid edge surfaces are at least partly displaced from the seat base so that the lap section of the vehicle belt and the shoulder section of the vehicle belt are received by the backrest portion from a gap between the first and second rigid edge surfaces and the backrest portion so that application of tension to the vehicle belt retains the child seat in the forward-facing orientation with respect to the vehicle seat, wherein movement of the first and second rigid edge surfaces from the second position to the first position causes the first and second rigid edge surfaces to displace a portion of the shoulder section and a portion of the lap section of the vehicle belt with respect to a surface of the backrest portion to thereby increase the tension in the vehicle belt that retains the child seat in the forward-facing orientation, wherein, in the forward-facing orientation, the first and second rigid edge surfaces of a first portion of the **tensioning mechanism** displace the belt to apply tension to the belt in the second belt path, and wherein, in the rear-facing orientation, the first and second rigid edge surfaces of a second portion of the **tensioning mechanism** displace the belt to apply tension to the belt.

'504 patent, claim 9:

What is claimed is:  (9) A child seat configured to be secured to a vehicle seat in both a rear-facing and a forward-facing orientation with a vehicle belt, the child seat comprising: . . . **a tensioning mechanism** attached to the seat base to be movable between a first position and a second position and comprising an engaging surface, the **tensioning mechanism** having an end attached to the backrest portion such that the **tensioning mechanism** is configured to rotate downwardly to the first position from the second position about an axis, and wherein the **tensioning mechanism** has a first lateral edge surface and a second lateral edge surface, the first and second lateral edge surfaces extending along respective sides of the **tensioning mechanism** from and transverse to the axis, wherein in the first position, the first and second lateral edge surfaces are substantially adjacent to the seat base, wherein in the second position, the first and second lateral edge surfaces are at least partly displaced from the seat base in order to receive the vehicle belt, wherein movement of the first and second lateral edge surfaces from the second position to the first position causes the engaging surface, which is disposed between the first and second lateral edge surfaces, to press a first portion of the vehicle belt against the opposing side portions and deflect a second portion of the vehicle belt to be closer to the seat portion or backrest portion than the first portion of the vehicle belt in order to apply tension to the vehicle belt to secure the child seat to the vehicle seat in a tensioned configuration, and wherein in each of the forward or rear-facing orientations, respective different portions of the first and second lateral edge surfaces of the **tensioning mechanism** displace the belt to apply tension to the belt.

### 1. *The dispute between the parties*

Nuna argues that the term "tensioning mechanism" should be construed as "a unitary tensioning mechanism." According to Nuna, the limitations of claims 1 and 16 of the '074 patent and claims 1, 5, and 9 of the '504 patent show that the "tensioning mechanism" must be "a unitary tensioning mechanism, not a device with two or more separate and individual components." Nuna Moving Brief, ECF No. 69, at 15. The crux of Nuna's argument here is that because the tensioning mechanism "is attached to the backrest portion at one point," "pivots about that point," "provides a sitting surface for an occupant," and, "when moved upwardly and rearwardly to a position displaced from the seat base, allows the seat base to receive belts," it moves in "predefined directions" and connotes a single, unitary structure. *Id.* at 16; *see id.* at 22. Nuna similarly contends the patents' specification support this construction, *see id.* at 18-21, 25, as does the fact that Britax acquiesced to multiple amendments to its applications during the prosecution process, amendments which added specificity to the composition of the tensioning structure and the nature of its movement, *see id.* at 21-22.

Britax claims no construction is needed, and Nuna is impermissibly attempting to rewrite and narrow the claim language for self-serving reasons. *See* Britax Moving Brief, ECF No. 70-1, at 8. According to Britax, the claim is unambiguous, and "[a]s shown in their proposed construction, Defendants do not have any issue understanding the term 'tensioning mechanism.'" *Id.* Britax also argues that "tensioning mechanism" should not be limited to a "unitary" structure, as this is an impermissible attempt to constrain the meaning of the term to "a single preferred embodiment." [13] *Id.* at 9. Britax contends that the specification would, to a person of

---

[13] At the *Markman* hearing, counsel for Britax stressed that in addition to being absent from either of the patents with respect to the tensioning mechanism, the word "unitary" was never

ordinary skill in the art, suggest more than one embodiment of "tensioning mechanism," none of which are "unitary." *Id*. at 10.

### 2. Discussion

At the outset, the Court observes that, "[i]n general, 'the mere depiction of a structural claim feature as unitary in an embodiment, without more, does not mandate that the structural limitation be unitary.'" *Textron Innovations Inc. v. Am. Eurocopter Corp.*, 498 F. App'x 23, 30 (Fed. Cir. 2012) (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1309 (Fed. Cir. 2005)). "Unless the claims, the specification, or the prosecution history *require* that the particular component be a single, one-piece structure, a court normally will not read that limitation into the claim." *Textron Innovations Inc.*, 498 F. App'x at 30 (emphasis added) (citing *Utica Enters., Inc. v. Fed. Broach & Mach. Co.,*109 F. Appx. 403, 407-08 (Fed. Cir. 2004)).

Here, even assuming that the tensioning mechanism *may* be properly characterized as a "unitary" structure, it does not appear that the patent language or prosecution history *require* that the "tensioning mechanism" be "unitary." First, no such requirement is explicitly recited in the specification or claim language—as Britax points out, the word "unitary" does not appear in either patent. What's more, the argument put forward by Nuna highlighting the components of the tensioning mechanism and how they move would appear to support the opposite conclusion. For example, Nuna argues, among several similar arguments, that the "tensioning mechanism" has "a proximal end pivotally attached to the backrest portion," which "requires the 'pivotally attached' 'tensioning mechanism' to pivot about a single axis in the backrest portion," and,

---

used at any point in the patent prosecution process. Counsel argued that the "unitary" embodiment was Nuna's characterization, not Britax's.

"[m]ovement in these predefined directions can only be accomplished if the tensioning mechanism is a unitary structure, and not multiple separate components."  Nuna Moving Brief at 16.  However, in the Court's view, highlighting the mechanism's component parts, even when working together as they do, underscores that far from the claim language requiring the tensioning mechanism to be a unitary structure, the mechanism may properly (and perhaps more accurately) be considered an aggregate of its component parts.[14; 15]

While not cited by Nuna, certain language in the specification (only one example of which is discussed below[16]) illustrates this point well.  The specification states as follows:

> [I]n some embodiments . . . the tensioning mechanism 30 may comprise a locking mechanism 60.  The structure and function of the locking mechanism 60 is illustrated in and described with respect to FIGS. 4, 4A, 4B, 5, and 5A. Though the locking mechanism 60 described herein has a specific structure and specific components, embodiments of the present invention contemplate use of other types of locking mechanisms with different structure.

> In some embodiments, the locking mechanism 60 may comprise two laterally-opposing locking members (e.g., bolts 61, 63) configured to translate between an extended position [ ] and a retracted position [ ].

'504 patent, column 9 lines 43-64; '074 patent, column 8 lines 42-54.  The specification at column 9 line 66, through column 10 line 12 (of the '074 patent), column 10 lines 5 through 18 (of the '504 patent) further provides as follows:

---

[14]    Conspicuously absent from Nuna's filings are any factually-analogous cases in which courts have determined that where a mechanism's component parts work in concert with one another, the mechanism as a whole must be considered "unitary" notwithstanding the absence of any such explicit limitation in the patent language.  As addressed below, to the extent courts have encountered this question, it appears they have come down on the other side of this issue.

[15]    Because Nuna's arguments pertaining to the amendments made by the patent examiner during the prosecution process rely on essentially the same logic—that the amendments illustrate that multiple things working together must combine to create a "unitary" whole, *see, e.g.*, Nuna Moving Brief at 21—the Court does not separately address them.

[16]    The referenced specification language is only one example of several describing a tensioning mechanism that may "comprise" a separate locking mechanism.

As shown in the depicted embodiment of FIG. 4, the locking mechanism 60 may comprise a cylindrical sleeve 66 that covers the components of the locking mechanism 60. The sleeve 66 may define openings that correspond to a first portion hole 62 and a second portion hole 64. Additionally, in some embodiments, the sleeve 66 may define a trigger opening 159 that, as will be described in greater detail herein, corresponds with a trigger [59] that is positioned on the seat base 12 . . . .FIG. 4A illustrates the locking mechanism 60 with the sleeve 66 removed to show the components of the locking mechanism [60]. In the depicted embodiment, the locking mechanism 60 comprises a first portion 72 and a second portion 74.

Figures 4, 4A, and 4B referenced in the specification, appear as follows:[17]



**FIG. 4**

**FIG. 4A**

**FIG. 4B**

As the specification language and corresponding figures demonstrate, the "tensioning mechanism" may be comprised of a subsidiary locking mechanism, which itself has multiple component parts. In this embodiment, not only does the specification not require characterization of the tensioning mechanism as a "unitary" structure; to the contrary, it would appear to preclude such a characterization. Indeed, it does not seem "unitary" is an appropriate

---

[17]     The image is rotated here 90 degrees clockwise from how it appears in the patent for clarity.

construction of a composite (tensioning) mechanism comprised of a separate composite (locking) mechanism which is in turn comprised of laterally-opposing locking bolts, a spring, and other parts.[18]  Cases addressing similar questions support this conclusion.  *See, e.g.*, *Bos. Sci. Corp. v. Cook Grp. Inc.*, No. CV 15-980, 2016 WL 7411128, at *4-*5 (D. Del. Dec. 22, 2016) (declining to adopt construction of a claim term as a "single, unitary structure" where the specified embodiment was not clearly "unitary" in nature, and where the specification did not preclude multiple embodiments), *report and recommendation adopted*, No. CV 15-980, 2017 WL 3977256 (D. Del. Sept. 11, 2017); *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 38 F. Supp. 3d 589, 621 (E.D. Pa. 2014) (declining to construe a claim term as housed in a "unitary structure" where  "the claims themselves explain that [the term] is comprised of multiple elements without limitation as to how they physically relate," and moreover finding "no support in the specification for the proposition that [the term] must be composed of a single, integrated device" where "the specification contemplates multiple components working together to perform the [term's] functions");[19] *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (explaining that, "[w]here a claim lists elements separately, the clear implication of the claim language is that those elements are distinct component[s] of the patented invention") (quotation marks omitted); *Cross Med. Prod., Inc.*, 424 F.3d at 1309

---

[18]     The logic of Nuna's argument regarding the components of the tensioning mechanism working in concert—it has "ends" that "attach" to "pivotally rotate" as a single, "unitary" structure—is, while unpersuasive, at least discernable in the absence of any further guidance from the patent language.  However, further guidance exists.  The explicit existence of an embodiment of the tensioning mechanism that includes an integral, subsidiary *mechanism* with independent mechanics and a quasi-independent function—*i.e.*, locking—in the Court's view further weakens this logic and confirms that the tensioning mechanism should not be limited to characterization as a "unitary" structure.

[19]     The court noted as further support for declining to construe the term "a subscriber location register" as "unitary" the fact that in a specification figure, "the SLR is depicted as composed of multiple separate boxes all contained within a larger box."  *Id.* at 622 n.31.

(finding "unitary" to be an adjective synonymous with "single-component" and declining to construe a claim term as being formed in a "unitary" structure where "[t]here is nothing in the written description or prosecution history that limits the [claim term] to being formed in a single-component structure"); *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1358 (Fed. Cir. 2003) (affirming the district court's decision not to construe the term "flight bars" as a "unitary structure" where flight bars "may include a plurality of pieces driven by one conveyor or multiple conveyors moving in synchronization," and further advising that a claim term is to be given "the full range of its ordinary meaning") (citation omitted); *KCJ Corp. v. Kinetic Concepts, Inc*., 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("[S]tanding alone, a disclosure of a preferred or exemplary embodiment encompassing a singular element does not disclaim a plural embodiment.").[20]

While Nuna's proposed construction is improper, the Court finds no construction beyond the ordinary meaning of the term is necessary: the scope of what is meant by "tensioning mechanism" in the context of the patents as a whole would be discernable to a person of ordinary skill in the art. *See NobelBiz, Inc. v. Glob. Connect, L.L.C.*, 701 F. App'x 994, 997 (Fed. Cir. 2017) ("The district court must provide a construction because the parties disputed not the *meaning* of the words themselves, but the *scope* that should be encompassed by the claim language.") (emphasis in original). Indeed, the claim language delineates the outer bounds of what is covered by tensioning mechanism when it states, for example, that the tensioning mechanism shall have

---

[20]     *Cf. Textron Innovations Inc*., 498 F. App'x at 30 (reversing a grant of summary judgment on infringement where it was not the case that a three-piece structure in an accused assembly could not qualify as a structure that appeared to be "unitary" in the specification's embodiment, and explaining that "the mere depiction of a structural claim feature as unitary in an embodiment, without more, does not mandate that the structural limitation be unitary") (citation omitted).

a proximal end pivotally attached to the backrest portion of the seat base and a distal end comprising a sitting surface for an occupant of the child seat and an engaging surface facing opposite to the sitting surface, wherein the tensioning mechanism is movable downwardly and forwardly to a first position substantially adjacent to the seat base and upwardly and rearwardly to a second position displaced therefrom, wherein placing the tensioning mechanism in the second position allows the seat base to receive the belt, and movement of the tensioning mechanism from the second position to the first position presses the belt against the first and second edges and deflects a portion of the belt between first and second edges to be closer to the seat or backrest portion than portions of the belt that engage the first and second edges and thus applies tension to the belt to secure the child seat to the vehicle seat in a tensioned configuration.

'074 patent, claim 1. *See G.I. Sportz, Inc. v. Valken, Inc.*, No. 1:17-CV-05590, 2019 WL 2724081, at *8 (D.N.J. June 30, 2019) ("The Court finds that the meaning of 'first surface area' and 'second surface area' are plainly explained by the claims, which describe the location, size, and purpose of those valve surface areas. Therefore, the Court finds that those terms shall be construed by their plain and ordinary meaning.").

Were there to remain any doubt as to what portions of the child seat constitute the "tensioning mechanism," one need look no further than the specification figures, which make clear the form of the tensioning mechanism in both its downward (first) position—the position in which the seat is secured to the belt via the pressure of the edges of the tensioning mechanism's proximal end—as well as its upward (second) position—the position in which the belt is fed into one of two pathways depending upon whether the seat is forward or rearward facing, prior to being secured to the belt and vehicle:



FIG. 11



FIG. 12

Perhaps most illuminating is the fact that Nuna has been able to accurately identify the extent of the tensioning mechanism in its own motion papers. The below figure, appearing in Nuna's moving brief at least four times, *see* Nuna Moving Brief at 5, 11, 14, 19, depicts side-by-side images of Britax's car seat with the tensioning mechanism in both the first position (left) and second position (right), and accurately shades the extent of the tensioning mechanism red (dark) with respect to the remainder of the car seat, which is white:



The Court's rejection of Nuna's proposed construction effectively resolves the dispute between the parties as to this term. In the absence of a dispute, and because the ordinary meaning of "tensioning mechanism" would be clear to a person of ordinary skill in the art, the Court declines to construe the term on its own. *See, e.g.*, *Bos. Sci. Corp.*, 2016 WL 7411128, at *6 ("Because Defendants have not shown that the [ ] Patent's specification or its prosecution history demand its proffered narrowed construction of this term, the Court rejects Defendants' proposal. This resolves the dispute here between the parties. The Court otherwise recommends that 'a control element including a connector element' be afforded its plain and ordinary meaning."); *Effective Expl., LLC v. Pennsylvania Land Holdings Co., LLC*, No. 2:14-CV-00845, 2015 WL 12753785, at *22 (W.D. Pa. May 8, 2015) ("[T]he Federal Circuit also recognized that 'district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.' *O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). Rather, the district court's construction need only resolve the parties' dispute. A district court may, for example, resolve the parties' dispute by rejecting a party's proposed construction, and preventing that party from arguing that construct."), *report and recommendation adopted sub nom. Effective Expl. v. Coal Gas Recovery*, No. 14-CV-0845, 2015 WL 12751773 (W.D. Pa. June 16, 2015). Indeed. "[a]dditional construction 'would only introduce confusion and ambiguity into a clear and unambiguous phrase.'"[21] *Becon Med., Ltd. v.*

---

[21]    Additionally, the Court is cognizant of the potential effect an unwarranted construction could have on the underlying factual issue of infringement. Although, pursuant to *Markman*, "the ultimate question of claim construction is for the judge and not the jury," *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 838 (2015), "the role of a district court in construing claims is not to redefine claim recitations or to read limitations into the claims to obviate factual questions of infringement and validity[,] but rather to give meaning to the limitations actually contained in the claims." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011).

*Bartlett*, No. CV 18-4169, 2019 WL 3996619, at *4 (E.D. Pa. Aug. 23, 2019) (quoting *Comcast*

*Cable Commc'ns*, 38 F. Supp. 3d at 608); *see CallWave Commc'ns, LLC v. AT&T Mobility, LLC*,

No. CV 12-1701, 2014 WL 7205657, at *9 (D. Del. Dec. 17, 2014) (finding no construction to

be necessary where a claim term "uses ordinary English words, which may be given their plain

and ordinary meaning"); *Vapor Point LLC v. Moorhead*, No. 4:11-CV-4639, 2013 WL

11275459, at *24 (S.D. Tex. Dec. 18, 2013) ("In cases where the ordinary meaning of the claim

term is readily apparent even to a lay judge, the court need not go further into intrinsic or

extrinsic evidence." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005))).

### B.    Claim terms: "proximal end" / "distal end"

The claim terms "proximal end" and "distal end" are used in the same patent claims as

the term "tensioning mechanism"—claims 1 and 16 of the '074 patent, and claims 1, 5, and 9 of

the '504 patent.[22]  Simply put, these terms refer to the two "ends" of the tensioning mechanism

discussed at length in the previous section.

### 1.    *The dispute between the parties*

Nuna argues that the claim terms "proximal end" and "distal end" should be construed as

"end of the unitary tensioning mechanism opposite to the distal end" and "end of the unitary

mechanism opposite to the proximal end," respectively.  Nuna Moving Brief at 12.  Nuna's

proposed construction is based on the same grounds as its proposed construction of "tensioning

mechanism"—because the tensioning mechanism is a "unitary" structure, Nuna argues, the

proximal and distal "ends" of the mechanism must be construed in a way that accounts for this

characteristic.  *See id*. at 12-15.  Britax argues that the proper construction of these claim terms

---

[22]    The Court does not reproduce these claims here, and rather relies on their reproduction in the preceding section of this Opinion.

should omit the word "unitary." Britax Moving Brief at 15. Apart from inclusion or omission of the word "unitary," the parties' constructions are identical.

## 2. *Discussion*

Based upon the comprehensive discussion above as to why construction of "tensioning mechanism" to include the modifier "unitary" is inappropriate, the Court concludes that it would be similarly inappropriate to modify reference to the tensioning mechanism with "unitary" in the construction of "proximal end" and "distal end." The Court therefore adopts the construction of Britax: "proximal end" shall be construed as "end of the tensioning mechanism opposite to the distal end," and "distal end" shall be construed as "end of the tensioning mechanism opposite to the proximal end."

## C. Claim term: "pivot structure"

The term "pivot structure" appears only in claim 13 of the '054 patent. That claim reads, in relevant part, as follows:

> What is claimed is: (13) A child seat configured to be secured to a vehicle seat in both a rear-facing and a forward-facing orientation by belt of the vehicle seat, the child seat comprising: . . . a **pivot structure** having a first pivot portion comprising a first lateral edge member and a second lateral edge member, the **pivot structure** attached to the backrest portion at an axis such that the **pivot structure** rotates between a first position and a second position pivotally about the axis, the first and second lateral edge members extending away from the backrest and substantially perpendicular to the axis, wherein in the first position, the first pivot portion is substantially adjacent to the seat base, and wherein in the second position, the first pivot portion is at least partly displaced from the seat base in order to enable the second belt path to receive the belt; the **pivot structure** having a second pivot portion comprising a third lateral edge member and a fourth lateral edge member, the third and fourth lateral edge members moving between a third position proximate to the seat portion and a fourth position at least partly dis placed from the seat portion in order to enable the first belt path to receive the belt . . . .

### 1.    The dispute between the parties

Nuna argues that "pivot structure" should be construed as "a unitary structure that pivots about an axis, including a first pivot portion and a second pivot portion."  Nuna Moving Brief at 25.  This construction is necessary, Nuna argues, for much the same reason the proposed construction of "tensioning mechanism" as a "unitary" mechanism is necessary—the pivot "structure" is a "unitary structure" when viewed in the context of its component parts and how they work together.  *Id.*  Nuna contends that claim 13 of the '504 patent, which states that "the pivot structure attached to the backrest portion at an axis such that the pivot structure rotates between a first position and a second position pivotally about the axis," supports its construction, because to rotate "about an axis," the "pivot structure" must move as a unitary structure.  *Id.* at 26.  Similarly, because the "pivot structure" has predefined positions, Nuna argues, it must be a unitary structure.  *Id.*

Britax contends no construction is necessary, and that Nuna is again attempting to improperly limit or narrow this term.  Britax Moving Brief at 12.  Britax states that Nuna's construction "renders other claim language meaningless by inserting redundant language about the axis and multiple pivot portions, when that language appears in the claim elsewhere."  *Id.* at 13.[23]

---

[23]    Britax includes a chart on page 14 of its moving brief illustrating how adopting Nuna's construction would render other language superfluous.  Nuna responds by claiming that Britax has not pointed to any authority stating that it is improper to have duplicative claim language.  *See* Nuna Resp. Brief at 9.  However, Britax cites several cases in support of the well-established proposition that limitations should not be read out of claim language or otherwise made superfluous.  *See* Britax Moving Brief, ECF No. 76, at 13.

## 2. *Discussion*

For the same reasons discussed above with respect to the claim term "tensioning mechanism," the Court does not find persuasive Nuna's contention that "pivot structure" requires construction as a "unitary" structure.  In the absence of any such requirement in the claim language, specification, or prosecution history, the Court declines to read this limitation into a construction of the term.[24]  *See Textron Innovations Inc. v. Am. Eurocopter Corp.*, 498 F. App'x 23, 30 (Fed. Cir. 2012); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1309 (Fed. Cir. 2005)); *Utica Enters., Inc. v. Fed. Broach & Mach. Co.,* 109 F. Appx. 403, 407-08 (Fed. Cir. 2004)).

The remainder of Nuna's proposed construction is also flawed.  First, that a "pivot structure" "pivots about an axis" is, in the Court's view, apparent in the name of the structure.  Even if this were not the case, however, the language of claim 13 provides that the "pivot structure" is "attached to the backrest portion [of the seat] at an axis such that the pivot structure rotates between a first position and second position pivotally about an axis."  Here in the plain language of the claim is all the information Nuna seeks to import into its construction.  To adopt Nuna's construction would therefore be to muddle an already clear description of "pivot structure," and the Court declines to do so.  *See Nichia Corp. v. TCL Multimedia Tech. Holdings, Ltd.*, No. CV 16-681, 2017 WL 5719267, at *6 (D. Del. Nov. 28, 2017) (finding a party's

---

[24]    Counsel for Britax confirmed at the *Markman* hearing that "pivot structure" is intended to cover the same subject matter as "tensioning mechanism."  *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) ("[C]laim drafters can [ ] use different terms to define the exact same subject matter.  Indeed this court has acknowledged that two claims with different terminology can define the exact same subject matter."); *Hormone Research Found. v. Genentech, Inc.,* 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990) ("It is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent claims are involved.").

proposed construction of a claim term "redundant" where the proposed construction was "apparent from the claim language" and thus there was "no reason to add [the proposed] language to the definition of the term"); *Becon Med., Ltd.*, 2019 WL 3996619, at *4 (finding additional construction "would only introduce confusion and ambiguity into a clear and unambiguous phrase" (*quoting Comcast Cable Commc'ns, LLC*, 38 F. Supp. 3d at 608)).

In addition to running the risk of confusing an otherwise unambiguous claim term (or, more accurately, as a result of the existing clarity of the term), Nuna's proposed construction violates the well-established rule that a court should construe claim language in a manner that gives effect to all a claim's terms. *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) ("Claims must be 'interpreted with an eye toward giving effect to all terms in the claim.'" (quoting *Bicon, Inc. v. Straumann Co.,* 441 F.3d 945, 950 (Fed. Cir. 2006))); *see Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,* 214 F.3d 1302, 1305-07 (Fed. Cir. 2000) (refusing to adopt a claim construction which would render claim language superfluous). Incorporating the proposed construction into the claim language illustrates this well: "having a first pivot portion," " having a second pivot portion," "at an axis," and "rotates" are all terms used in claim 13 of the '054 patent that become superfluous in light of Nuna's proposed construction. *See* Britax Moving Brief at 14. Consequently, Nuna's proposed construction is improper. *See, e.g.*, *Fontem Ventures, B.V. v. NJOY, Inc.*, No. CV 14-1645, 2015 WL 12766460, at *7 (C.D. Cal. Jan. 29, 2015) (declining to construe "shell" or "housing" as "a one piece" shell/housing because "[i]f, as Defendants argue, 'integrally formed' means 'made of one piece,' the quoted phrase, 'integrally formed shell,' is redundant[; a]ccepting Defendants' view, 'integrally formed shell(housing)' means 'a one-piece shell made of one piece'"); *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007) ("[C]onstruing the word

'vertical' as referring to merely the orientation of the opening would render the phrases 'along one of said side edges' and 'along one vertical corner of said structure' superfluous, a methodology of claim construction that this court has denounced.").

Finally, because the plain and ordinary meaning of "pivot structure" is clear from the language of claim 13 of the '054 patent, the Court declines to offer its own alternative construction of the term.

### D. Terms of degree

The remainder of the disputed claim terms can be characterized as "terms of degree." Nuna contends the following terms of degree should be construed as indefinite because they do not inform a person of ordinary skill in the art as to their scope: "substantially adjacent;" "proximate an intersection of the backrest portion and seat portion;" "proximate an intermediate region of the seat portion;" "generally at a middle of the seat portion in a forward and rearward direction;" "generally at an intersection of the seat and backrest portions;" "proximate to the second belt path;" "proximate to the first belt path;" and "proximate to the seat portion." *See* Nuna Moving Brief at 28-39. Before addressing each claim term individually, the Court briefly reviews the legal principles applicable to the construction of "terms of degree," as well as the legal principles underlying "indefiniteness" and "invalidity."

#### 1. *Applicable legal principles*

##### a. Invalidity, indefiniteness, & terms of degree

Patent "[v]alidity and infringement are distinct issues, bearing different burdens, different presumptions, and different evidence." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015); *see Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's

charge of infringement."). "Invalidity is an affirmative defense that 'can preclude enforcement of a patent against otherwise infringing conduct.'" *Commil USA, LLC*, 135 S. Ct. at 1929 (quoting 6A Chisum on Patents § 19.01, p. 19–5 (2015)). Because, pursuant to 35 U.S.C. § 282(a), "[a] patent shall be presumed valid," a defendant in an infringement case seeking to raise the defense of invalidity must show such invalidity "by clear and convincing evidence." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011); *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) ("Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence.").

Indefiniteness is one of several grounds upon which a patent may be found to be invalid that flow from the requirements of 35 U.S.C. § 112. *See Orexo AB v. Actavis Elizabeth LLC*, 371 F. Supp. 3d 175, 186 (D. Del. 2019) ("Under § 112, a patent can be invalid for indefiniteness, lack of enablement, or lack of an adequate written description. Although these concepts can overlap at times, they are each governed by different legal standards, and they have been described by the Federal Circuit as separate and distinct.") (citations omitted). That a patent may be found invalid for indefiniteness is a natural corollary to the requirement in 35 U.S.C. § 112(a) that the "specification shall contain a written description of the invention" in "full, clear, concise, and exact terms." As the Supreme Court has explained,

> [a] patent holder should know what he owns, and the public should know what he does not. For this reason, the patent laws require inventors to describe their work in "full, clear, concise, and exact terms," 35 U.S.C. § 112, as part of the delicate balance the law attempts to maintain between inventors, who rely on the promise of the law to bring the invention forth, and the public, which should be encouraged to pursue innovations, creations, and new ideas beyond the inventor's exclusive rights.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002).

Under the operative standard, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Reasonable certainty does not require absolute or mathematical precision." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (quotation marks omitted). As "indefiniteness" relates to the instant matter, "[i]t is well-established . . . that claims involving terms of degree are not inherently indefinite." *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, 388 F. Supp. 3d 362, 365 (D. Del. 2019) (citing *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017)). "On the contrary, '[c]laim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention.'" *f'real Foods, LLC*, 388 F. Supp. 3d at 365 (quoting *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014)).

### b. When to engage in the indefiniteness inquiry

"A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112 is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."[25] *CSB-Sys. Int'l Inc. v. SAP Am., Inc.*, No. CIV.A.

---

[25] Although indefiniteness is a legal inquiry, the Federal Circuit recently affirmed that when underlying factual disputes would be dispositive of indefiniteness, the indefiniteness inquiry may be amenable to resolution by a jury:

> As an initial matter, Bombardier argues that the question of indefiniteness should have been before the court and not the jury. We have held that indefiniteness "is amenable to resolution by the jury where the issues are factual in nature." *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003). We have likewise held that a "question about the state of the knowledge of a skilled artisan is a question of fact." *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1225 (Fed. Cir. 2015). Here, the primary disputes are: (1) whether a

10-2156, 2011 WL 3240838, at *16 (E.D. Pa. July 28, 2011) (quoting *Biomedino, LLC v. Waters Techs. Corp.,* 490 F.3d 946, 949 (Fed. Cir. 2007)); *Amgen Inc. v. F. Hoffman–LA Roche Ltd.,* 580 F.3d 1340, 1371 (Fed. Cir. 2009) ("Indefiniteness is a question of law.").  Yet "district courts throughout the country have generally been reluctant to consider whether a patent is indefinite at the claim construction phase, rather than at the summary judgment phase." *Junker v. Med. Components, Inc.*, No. CV 13-4606, 2017 WL 4922291, at *2 (E.D. Pa. Oct. 31, 2017).  "Several well-settled principles . . . tend to discourage rulings on indefiniteness at the *Markman* stage," including the high burden of proof a defendant must satisfy—clear and convincing evidence—as well as an indefiniteness ruling's dispositive effect.[26]  *CSB-Sys. Int'l Inc.*, 2011

----

person of ordinary skill in the art would have understood how to design a "seat position" for a standard rider despite the errors in the dimensions provided in the specification; and (2) whether a person of ordinary skill in the art would have known how to place a dummy or rider in a "natural operating position" on a snowmobile. The evidence presented on these topics was almost exclusively extrinsic, in large part encompassing warring expert testimony. The question of definiteness thus required the resolution of critical factual issues and was properly before the jury.

*Bombardier Recreational Prod. Inc. v. Arctic Cat Inc.*, No. 2018-2388, 2019 WL 4593479, at *6 (Fed. Cir. Sept. 20, 2019).

[26]    As one district court has explained,

to decide indefiniteness during claim construction depends on why the alleged infringer asserts that the claim is indefinite. When a claim is asserted to be indefinite because it has *no* meaning to a person skilled in the art, an indefiniteness decision at the claim construction stage may be practically unavoidable. But in other situations, the issues may not be as closely dependent on each other, and therefore an indefiniteness decision will be better left for decision at summary judgment, on a more developed record.

*Cipher Pharm. Inc. v. Actavis Labs. FL, Inc.*, 99 F. Supp. 3d 508, 514 (D.N.J. 2015) (emphasis in original).  In the present action, it is not the case that Nuna is arguing the challenged terms of degree have *no* meaning; rather, Nuna argues that there is not a sufficiently objective baseline for their application.

WL 3240838, at *17; *see Int'l Dev. LLC v. Richmond*, No. CIV.A. 09-2495, 2010 WL 4703779, at *7 (D.N.J. Nov. 12, 2010) ("[R]ather than giving meaning to a claim, as a *Markman* hearing is meant to do, indefiniteness invalidates the patent claims entirely. *Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371, 1376 (Fed. Cir. 2001). This dispositive effect is more appropriately tackled at summary judgment. Thus, this Court finds persuasive the determinations of several other courts to defer indefiniteness until summary judgment."); *Capital Sec. Sys., Inc. v. NCR Corp.*, No. 1:14-CV-1516, 2016 WL 3517595, at *4 (N.D. Ga. June 28, 2016) ("The Federal Circuit has made clear that it has 'certainly not endorsed a regime in which validity analysis is a regular component of claim construction.'" (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005))); *cf. Kangaroo Media, Inc. v. YinzCam, Inc.*, No. 2:12-CV-00382, 2013 WL 8812587, at *32 (W.D. Pa. Feb. 5, 2013) ("Although the Federal Circuit frequently addresses validity issues in conjunction with claim construction issues on appeal that is *after* the district court has issued a final judgment.") (emphasis in original), *report and recommendation adopted as modified*, No. CIV.A. 12-0382, 2014 WL 3378692 (W.D. Pa. July 9, 2014).

In the present case, as in *CSB-Sys. Int'l Inc. v. SAP Am., Inc.*, No. CIV.A. 10-2156, 2011 WL 3240838 (E.D. Pa. July 28, 2011),

> the Court faces a conundrum. Given the aforementioned jurisprudence, the current issues of indefiniteness are premature at such an early stage of the litigation. Defendant, however, raises an indefiniteness argument as to multiple claim terms without either (a) offering an alternative proposed construction for such terms or (b) moving for summary judgment on invalidity grounds.

*Id.* at 18. Indeed, "[w]hile the court recognizes that a determination of indefiniteness is necessarily intertwined to some degree with claim construction, it is clear that the court must first attempt to determine what a claim means before it can determine whether the claim is invalid for

indefiniteness." *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, No. 02-148, 2003 WL 124149, at *1 n.1 (D. Del. Jan. 13, 2003).  In attempt to resolve this conundrum, the Court engages in claim construction analysis with respect to the terms Nuna alleges are indefinite, while making only preliminary findings as to indefiniteness in light of the intrinsic record.  These preliminary indefiniteness findings are without prejudice to Nuna's ability to reassert its indefiniteness arguments at the close of discovery by way of a motion for summary judgment. [27; 28]  *See CSB-Sys. Int'l Inc.*, 2011 WL 3240838, at *18.  *See also ConocoPhillips Co. v. In-Depth Compressive Seismic, Inc.*, No. CV H-18-0803, 2019 WL 1877374, at *18 (S.D. Tex. Apr. 26, 2019) ("Although a court may find a term invalid for indefiniteness after construing the term, what a term means to a person of ordinary skill in the art is a separate question from whether it is sufficiently definite to put others in the field on notice regarding the bounds of the claims." (citing *Gilead Sciences, Inc. v. Mylan, Inc.*, No. 1:14-CV-99, 2015 WL 1534067, *2 (N.D. W. Va. April 6, 2015))).

As discussed below, the Court finds that each of the terms for which Nuna alleges indefiniteness should be construed according to its plain and ordinary meaning, which is ascertainable in the context of the patent language.  Moreover, the Court is, at this stage, unable

---

[27]   This approach has been taken by several district courts in similar circumstances.  *See, e.g.*, *Capital Sec. Sys., Inc. v. NCR Corp.*, No. 1:14-CV-1516, 2016 WL 3517595, at *4 (N.D. Ga. June 28, 2016); *Vapor Point LLC v. Moorhead*, No. 4:11-CV-4639, 2013 WL 11275459, at *16 (S.D. Tex. Dec. 18, 2013); *CSB-Sys. Int'l Inc.*, 2011 WL 3240838, at *18; *Int'l Dev. LLC*, 2010 WL 4703779, at *9.

[28]   The Court declines to consider the parties' competing expert declarations at this time.  The intrinsic evidence is sufficient to resolve the parties' dispute as to claim construction.  The Court reserves an examination of expert declarations if and until the Court reengages in an indefiniteness inquiry at the close of discovery, when the totality of extrinsic evidence is available.  Because the Court does not consider either declaration at this time, each party's objections to the other's expert declaration—which were filed with their pre-*Markman* hearing joint memorandum, *see* ECF No. 78, and argued at the hearing—are moot.

to conclude that the disputed terms are indefinite based upon the intrinsic evidence. Nuna may again challenge these terms as indefinite after the close of discovery should a basis for such a challenge exist. *See CSB-Sys. Int'l Inc.*, 2011 WL 3240838, at *18.

Having set forth the applicable law as to the construction of terms of degree and determinations of indefiniteness, the Court proceeds to addressing the remaining disputed claim terms.

### 2. *Individual Claim Terms*

#### a. Claim term: "substantially adjacent"

The term "substantially adjacent" is used in the following manner in the patent claims identified by the parties:

'074 patent, claim 1 / '504 patent, claim 1:

What is claimed is: (1) A child seat configured to be secured to a vehicle seat in both a rear-facing and front-facing orientation, the child seat comprising: . . . a tensioning mechanism having a proximal end pivotally attached to the backrest portion of the seat base and a distal end comprising a sitting surface for an occupant of the child seat and an engaging surface facing opposite to the sitting surface, wherein the tensioning mechanism is movable downwardly and forwardly to a first position **substantially adjacent** to the seat base and upwardly and rearwardly to a second position displaced therefrom, wherein placing the tensioning mechanism in the second position allows the seat base to receive of the belt, and movement of the tensioning mechanism from the second position to the first position presses the belt against the first and second edges and deflects a portion of the belt between first and second edges to be closer to the seat or backrest portion than portions of the belt that engage the first and second edges and thus applies tension to the belt to secure the child seat to the vehicle seat in a tensioned configuration . . . .

'074 patent, claim 16:

What is claimed is: (16) A method for manufacturing a child seat configured to be secured to a vehicle seat in both a rear-facing orientation and a front-facing orientation, the method comprising: . . . attaching a proximal end of a tensioning mechanism [to] the backrest portion of to the seat base, wherein a distal end of the tensioning mechanism comprises a sitting surface for an occupant of the child seat and an engaging surface facing opposite to the sitting surface, wherein the tensioning mechanism is rotatable downwardly and forwardly to a first position

**substantially adjacent** to the seat base and upwardly and rearwardly to a second position displaced therefrom, wherein placing the tensioning mechanism in the second position allows the seat base to receive the belt, and the movement of the tensioning mechanism from the second position to the first position presses the belt against the first and second edges and deflects a portion of the belt between first and second edges to be closer to the seat or backrest portion than portions of the belt that engage the first and second edges and thus applies tension to the belt to secure the child seat to the vehicle seat in a tensioned configuration, wherein the seat base of the child seat is configured to receive the belt in both a rear-facing and front-facing orientation.

'504 patent, claim 5:

What is claimed is: (5) A child seat configured to be secured to a vehicle seat in a rear-facing orientation in which an occupant of the child seat faces toward a backrest of the vehicle seat and a forward-facing orientation in which an occupant of the child seat faces away from the vehicle backrest, where the vehicle seat has a vehicle belt having a lap portion and a shoulder portion, the child seat comprising: . . . a tensioning mechanism . . . wherein in the first position, the first and second rigid surfaces are **substantially adjacent** to the seat base, and wherein in the second position, the first and second rigid edge surfaces are at least partly displaced from the seat base so that the lap section of the vehicle belt and the shoulder section of the vehicle belt are received by the backrest portion from a gap between the first and second rigid edge surfaces and the backrest portion so that application of tension to the vehicle belt retains the child seat in the forward facing orientation with respect to the vehicle seat . . . .

'504 patent, claim 9:

What is claimed is: (9) A child seat configured to be secured to a vehicle seat in both a rear-facing and a forward-facing orientation with a vehicle belt, the child seat comprising: . . . a tensioning mechanism . . . wherein in the first position, the first and second lateral edge surfaces are **substantially adjacent** to the seat base, wherein in the second position, the first and second lateral edge surfaces are at least partly displaced from the seat base in order to receive the vehicle belt . . . .

'504 patent, claim 13:

What is claimed is: (13) A child seat configured to be secured to a vehicle seat in both a rear-facing and a forward-facing orientation by a belt of the vehicle seat, the child seat comprising: . . . a pivot structure having a first pivot portion comprising a first lateral edge member and a second lateral edge member, the pivot structure attached to the backrest portion at an axis such that the pivot structure rotates between a first position and a second position pivotally about the axis, the first and second lateral edge members extending away from the backrest and substantially perpendicular to the axis, wherein in the first position, the first pivot portion is

**substantially adjacent** to the seat base, and wherein in the second position, the first pivot portion is at least partly displaced from the seat base in order to enable the second belt path to receive the belt . . . .

### i. *The dispute between the parties*

Nuna argues that the term "substantially adjacent" is indefinite, because "[e]ven when read in light of the specification, the claims do not inform a [person of ordinary skill in the art] with reasonable certainty about the scope of 'substantially adjacent' so that a [person of ordinary skill in the art] could determine whether an accused structure is 'substantially adjacent' to the seat base." Nuna Moving Brief at 29. Nuna claims that "[t]he claims, read in light of the specification, do not offer an objective boundary for how close to the seat base is considered 'substantially adjacent.'" *Id.*

Britax argues that this term is clear and does not need to be construed. According to Britax, the plain meaning of "substantially adjacent" in the context of the patent language and specification is when the "tensioning mechanism" is in the "first position" with respect to the seat base, "e.g. closed." Britax Moving Brief at 19-20. Britax also contends that "[a]djacent is defined by what it means to use this product as a functional child seat," such that "[t]he tensioning mechanism must be 'substantially adjacent' to the seat base so that a child can use the seat by sitting comfortably in the seat when the seat is secured to the vehicle." Britax Resp. Brief, ECF No. 77, at 26. "Thus," Britax argues, "the claim indicates that the tensioning mechanism will be substantially adjacent to the seat base so that a child can sit on the seat base when in the seat." *Id.*

### ii. *Discussion*

In the Court's view, the patent language reveals that there is a plain and ordinary meaning of "substantially adjacent," one which would be clear to a person of ordinary skill in the art.

Simply put, and as Britax points out, the tensioning mechanism/pivot structure is "substantially adjacent" to the seat base when the seat base can actually be used as a seat—that is, when the tensioning mechanism/pivot structure is in the "first" position. The specification confirms this.[29] In reference to a specific embodiment, the specification of the '074 patent at column 15, lines 38 through 50, states as follows:

> The seat base 305 may be configured to receive a seatbelt 317 in an untensioned state. Because embodiments of the child seat 300 have a tensioning mechanism 330, there is no need for the belt 317 to be tensioned directly by a user grasping the belt 317. Rather the user may apply tension to the belt 317 by rotating the tensioning mechanism 330 between a second position (shown in FIG. 12) and a first position (shown in FIG. 11), where the first position is **substantially adjacent** to the seat base 305 and the second position is displaced therefrom. The movement of the tensioning mechanism 330 to the first position may cause the tensioning mechanism 330 to contact a portion of the belt 317 and apply tension to the belt 317.

Figures 11 and 12 as referenced are reproduced below:

---

[29]   "Claim language must be viewed in light of the specification, which is the single best guide to the meaning of a disputed term." *Interval Licensing LLC*, 766 F.3d at 1374.



FIG. 11



FIG. 12

Here, the specification makes clear that the tensioning mechanism is substantially adjacent to the seat base in figure 11—*i.e.*, when the tensioning mechanism is "closed,"[30] and capable of receiving an occupant—and *not* substantially adjacent in figure 12. Similarly, that the tensioning mechanism is substantially adjacent to the seat base when it is "*fully contained within the profile of the seat base* [ ], thereby keeping the tensioning mechanism [ ] from protruding into the space of the child seat [ ] reserved for the occupant," '074 patent, column 7 lines 46-49; '504 patent, column 7 lines 51-54 (emphasis added), makes clear what "substantially adjacent" means in the context of the invention. For the tensioning mechanism to be substantially adjacent to the seat base, the seat as a whole must be able to operate in a manner that will allow it to fulfill its ultimate purpose: to safely carry a child occupant. This, it can only achieve when the distal end of the tensioning mechanism becomes capable of serving as a sitting surface, which, in turn, may only happen when the tensioning mechanism is fully contained within the profile of the seat base. A person of ordinary skill in the art, educated in mechanical engineering and possessing relevant work experience with child car seats, would understand the car seat's operation as such, which would inform him or her of the plain and ordinary meaning of "substantially adjacent" as used in the '074 and '504 patents with reasonable certainty. *See Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1362 (Fed. Cir. 2019) ("In sum, the written description of the '359 patent provides sufficient detail to inform a person of ordinary skill in the art about the meaning of 'lofty . . . batting.' That puts this case in the same class as cases like [*Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370 (Fed. Cir. 2017)] and [*Enzo Biochem, Inc. v. Applera*

---

[30] Although Nuna takes issue with Britax's characterization of the tensioning mechanism being in a "closed" position, *see* Britax Moving Brief at 20; Nuna Resp. Brief at 18-19—the word "closed" does not appear in either patent in relation to the tensioning mechanism being in the "first" position—the Court does not find this characterization problematic; rather, it seems consistent with the ordinary meaning of "substantially adjacent" in the context of the invention.

*Corp.*, 599 F.3d 1325 (Fed. Cir. 2010)], where we held that examples and procedures in the written description provided sufficient guidance and points of comparison to render claim terms not indefinite.").

Moving to a preliminary indefiniteness inquiry, Nuna's argument that the claims "do not offer an objective boundary for how close to the seat base is considered 'substantially adjacent,'" Nuna Moving Brief at 29, is, in the Court's view, incorrect.[31] "'Reasonable certainty' does not require absolute or mathematical precision." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (quotation marks omitted). Rather, when a question of definiteness can be answered according to "what can be seen by a normal human eye," this observation is capable of providing "an objective baseline through which to interpret the claims." *Sonix Tech. Co.*, 844 F.3d at 1378. Here, a person of ordinary skill in the field would be able to view the operation of the car seat—specifically the tensioning mechanism/pivot structure vis-à-vis the seat base—and conclude when the tensioning mechanism is in the "first" position such that its distal end could serve as a sitting surface, and, such that the tensioning mechanism/pivot structure is

---

[31]    As a general matter, the use of the modifier "substantially" does not preclude establishing an objective boundary. *See TMC Fuel Injection Sys., LLC v. Ford Motor Co.*, No. CIV.A. 12-4971, 2014 WL 123306, at *5 (E.D. Pa. Jan. 13, 2014) (finding that "driven at a substantially constant speed" was self-evident and required no construction, notwithstanding that "[s]ubstantially, in its ordinary meaning, means most of the time; it does not mean absolutely always"); *Verve LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002) ("Expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention."); *Ecolab Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) ("[L]ike the term 'about,' the term 'substantially' is a descriptive term commonly used in patent claims to avoid a strict numerical boundary to the specified parameter."). Similarly, the term "substantially adjacent" is not, *per se*, indefinite. *See Pac. Bioscience Labs., Inc. v. Nutra Luxe MD, LLC*, No. C10-0230, 2012 WL 12845607, at *18 (W.D. Wash. Mar. 21, 2012) (finding the term "mounting assembly for holding" to be unambiguous and requiring no construction in light of contextual claim language, specifically, that the "mounting assembly" must hold the contacting elements "substantially adjacent to each other").

fully contained within the profile of the seat. "Thus, although the term" substantially adjacent "may be a term of degree, it is not 'purely subjective.'"[32] *Id.* (finding that the term "visually negligible" was not indefinite, comparing that term to "purely subjective" and therefore indefinite claim terms such as "aesthetically pleasing" and "in an unobtrusive manner that does not distract"); *see f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, 388 F. Supp. 3d 362, 365 (D. Del. 2019) (finding the term "sufficient mass," as it applied to a splash shield for a blender holding a cup containing the blended substance in place, was not indefinite, because "it is very easy for one of ordinary skill in the art to determine whether sufficient mass has been achieved for their particular blender by simply observing whether the cup stays in the holder during blending or not").

Because the Court finds that a person of ordinary skill in the art would understand the plain and ordinary meaning of the term "substantially adjacent" in the context of the invention, the Court declines to give the term any construction beyond its plain and ordinary meaning. *See CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, No. CV 12-1701, 2014 WL 7205657, at *9 (D. Del. Dec. 17, 2014) (finding no construction to be necessary where a claim term "uses ordinary English words, which may be given their plain and ordinary meaning"); *Vapor Point LLC v. Moorhead*, No. 4:11-CV-4639, 2013 WL 11275459, at *24 (S.D. Tex. Dec. 18, 2013) ("In cases where the ordinary meaning of the claim term is readily apparent even to a lay judge, the court need not go further into intrinsic or extrinsic evidence." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005))). The Court also does not find that the term, at this

---

[32]    *Compare Interval Licensing LLC*, 766 F.3d at 1377 ("We hold that the claim phrase 'in an unobtrusive manner that does not distract a user' is indefinite under 35 U.S.C. § 112, ¶ 2.").

stage, warrants a finding of indefiniteness. *See Vapor Point LLC*, 2013 WL 11275459, at *24 (engaging in preliminary indefiniteness inquiry during claim construction and "find[ing] that 'a quantity' is not indefinite at this stage").

>    **b.      Claim terms:  "proximate an" / "proximate to" terms**

Four of the terms of degree Nuna claims are indefinite begin with "proximate an" or "proximate to":  "proximate an intersection of the backrest portion and seat portion;" "proximate an intermediate region of the seat portion;" "proximate to the second belt path;" "proximate to the first belt path;" and "proximate to the seat portion."  These terms are used in the following manner in the patent claims identified by the parties:

'074 patent, claim 7:

What is claimed is:  (7) The child seat . . . wherein the second belt path is defined between the tensioning mechanism and the seat base at a position **proximate an intersection of the backrest portion and the seat portion**.

'074 patent, claim 6:

What is claimed is:  (6) The child seat . . . wherein the first belt path is defined between the tensioning mechanism and the seat base at a position **proximate an intermediate region of the seat portion**.

'504 patent, claim 13:

What is claimed is:  (13) A child seat configured to be secured to a vehicle seat in both a rear-facing and a forward-facing orientation by a belt of the vehicle seat, the child seat comprising:  a seat base comprising a seat portion, a backrest portion, a first belt path generally at a middle of the seat portion in a forward and rearward direction, and a second belt path generally at an intersection of the seat and backrest portions, first and second lateral edges that protrude forwardly and upwardly from opposing sides of the backrest portion **proximate to the second belt path**, third and fourth lateral edges that protrude forwardly and upwardly from opposing sides of the seat portion **proximate to the first belt path** . . . .

the pivot structure having a second pivot portion comprising a third lateral edge member and a fourth lateral edge member, the third and fourth lateral edge members moving between a third position **proximate to the seat portion** and a fourth position at least partly dis placed from the seat portion in order to enable the first belt path to receive the belt . . . .

### i. The dispute between the parties

Nuna asserts that these claim terms are indefinite "due to the use of the word 'proximate.'" Nuna Moving Brief at 31, 34, 37, 39. Nuna contends "[t]he word 'proximate' is a term of degree that, when read in light of the specification, fails to convey with reasonable certainty to a [person of ordinary skill in the art]" how far from a given location another object may be located to be covered by the patents. *Id*. at 32, 37.

Britax first claims that these are ordinary words commonly used in the English language, the patents are invoking their normal uses, and therefore no further construction is necessary. Britax Moving Brief at 22, 24. Britax further argues that a person of ordinary skill in the art would understand what these terms mean in the context of a given claim, because, given the forces at play, the position of the belt paths (or other components) only makes sense in certain configurations based upon what direction the child seat is facing. *Id*. at 22, 23, 25.

### ii. Discussion

In addition to its use in the claim identified above, the claim term "proximate an intersection of the backrest portion and the seat portion," or substantially similar language, appears in the specification as follows:

In some embodiments, first belt path may be defined between the tensioning mechanism and the seat base at a position proximate an intermediate region of the seat portion. The second belt path may be defined between the tensioning mechanism and the seat base at a position **proximate an intersection of the seat portion and backrest portion of the seat base.**

'074 patent, column 2 lines 12-18; '504 patent, column 2 lines 20-26.

The belt path may be defined between the tensioning mechanism and the seat base at a position proximate the center of the seat portion, so as to position the child seat in a rear-facing orientation. Alternatively, the belt path may be defined between the tensioning mechanism and the seat base at a position **proximate the intersection of the backrest portion and seat portions**, so as to position the child seat in a front-facing orientation.[33]

'074 patent, column 3 lines 35-43; '504 patent, column 2 lines 43-51.

FIG. 9 shows a child seat 300 of one embodiment of the present invention configured in a front-facing direction and attached to a vehicle seat 302 by a seatbelt 317. The seatbelt 317 may be engaged with the child seat 300 via the second belt path 335 that spans a distance between the two edges 320, 325 of the seat base 305 and is disposed between the tensioning mechanism 330 and the seat base 305. In one embodiment, the second belt path 335 is defined **proximate the intersection of the backrest portion 315 and the seat portion** 310 of the seat base 305, as shown in FIG. 9.

'074 patent, column 16 lines 35-43; '504 patent, column 16 lines 49-58.

FIG. 10 shows a child seat 300 of one embodiment of the present invention configured in a rear-facing orientation and attached to a vehicle seat 302 by a seatbelt 317. The seatbelt 317 may be engaged with the child seat 300 via the first belt path 340 that spans a distance between the two edges 320, 325 of the seat base 305 and is disposed between the tensioning mechanism 330 and the seat base 305. The first belt path 340 may be defined approximately across the seat portion 310 of the seat base 305, such that the first belt path lies proximate an intermediate region of the seat portion 310. The intermediate region of the seat portion, shown where the first belt path 340 crosses the seat portion 310 in FIG. 14, may be located in between a front edge of the seat portion 310 and **proximate an intersection of the backrest portion 315 and the seat portion** 310, as depicted.

'074 patent, column 16 lines 43-52; '504 patent, column 16 line 59-column 17 line 6.

Figures 9, 10, and 14, referenced above, appear in the specification as reproduced below:

---

[33] Claim 14 of the '074 patent is identical to the language in this section of the specification following "Alternatively."



*FIG. 9*



*FIG. 10*



FIG. 14

As it appears in claim 1 of the '074 patent, "proximate an intersection" is used to indicate the position of the second belt path (for use when the child seat is in the forward-facing orientation), with the claim stating that the second belt path exists between the tensioning mechanism and the seat base "proximate an intersection of the backrest portion and the seat portion." The strongest argument for indefiniteness as to this term is that the "intersection" of the backrest portion and seat portion of the seat base in some embodiments, is, arguably, difficult to discern. In certain embodiments these two portions of the seat base do not join at a right angle; rather, the seat base as contemplated in these embodiments appears to be more of a smooth or curved continuum of the two portions. In this vein, Nuna argues that "[t]he specification attributes no significance to the location of the intersection," and the patent language "fails to provide an objective boundary in determining how far from the intersection . .

. the second belt path can be" and still be considered "proximate." Nuna Moving Brief at 33. As an example, Nuna points to figure 9 of the specification, claiming the specification "identifies a location halfway up the backrest portion" for the second belt path, which they claim is not "very near," and therefore not "proximate," the intersection. *Id.* at 32-33.

The Court respectfully disagrees. First, Nuna's characterization of figure 9 is just that—a characterization. Given its angle vis-à-vis the viewer, the figure by itself does not, in the Court's view, indicate that the second belt path is "halfway up" the backrest portion. A profile view of this embodiment might indicate that, based upon the form of the seat behind where the belt comes into contact with the seat, the second belt path is indeed "very near" the intersection of the seat base's two components. The Court therefore does not find Nuna's characterization of figure 9 dispositive of the issue.

However, several other figures in the specification *do* make clear that the second belt path is very near the intersection of the backrest and seat portion of the seat base. Figures 1A, 7A, 8A, and 13—each profile views of embodiments of the invention—show belt paths encountering the seat at points very near the area on the surface of the seat that is best described as the "intersection" of the seat and backrest portions of the seat base. These figures are reproduced as follows.[34]

---

[34]     Figure 13 is rotated here 90 degrees clockwise from how it appears in the patent for clarity.



FIG. 1A



FIG. 7A



FIG. 8A



FIG. 13

Plainly, in these more angular embodiments, whether the belt path is "very near" the "intersection" of the seat and backrest portions of the seat base is more straightforward than in embodiments best described as smooth or curved. *See* Figs. 10 and 13. However, even in the curved embodiments, when viewed from their profiles the belt path indeed appears "very near" what can best be described as the "intersection" of the seat and backrest.

There are two important things to note here. First, there is nothing improper with the patents contemplating embodiments of the invention which might possess different "seat base" shapes—some more angular, and some less so. *See Multiwave Sensors, Inc. v. Sunsight Instruments, LLC*, 283 F. Supp. 3d 1279, 1284 (M.D. Fla. 2017) ("[T]he patent does not disclose a one-size-fits-all apparatus. Instead, the specification expressly suggests multiple embodiments to address antennae with different shapes . . . ."); *Bos. Sci. Corp. v. Cook Grp. Inc.*, No. CV 15-980, 2016 WL 7411128, at *4-*5 (D. Del. Dec. 22, 2016) (observing that a specification did not preclude multiple embodiments), *report and recommendation adopted*, No. CV 15-980, 2017 WL 3977256 (D. Del. Sept. 11, 2017). Second—and in light of the first observation—there is nothing improper with employing terms of degree to account for multiple embodiments, as well as to distinguish the invention from prior art, if those terms satisfy the statutory requirements of 35 U.S.C. § 112. *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310-11 (Fed. Cir. 2003) ("While the term 'generally parallel,' as the district court noted, is mathematically imprecise, we note that words of approximation, such as 'generally' and 'substantially,' are descriptive terms 'commonly used in patent claims to avoid a strict numerical boundary to the specified parameter.'" (quoting *Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358, 1367 (Fed. Cir. 2001))); *Verve LLC v. Crane Cams, Inc.,* 311 F.3d 1116, 1120 (Fed. Cir. 2002) ("Expressions such as 'substantially' are used in patent documents when warranted by the

nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention."); *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988) (explaining that words such as "substantially equal" and "closely approximate" "are ubiquitous in patent claims[; s]uch usages, when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention, and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts"); *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (explaining that "mathematical precision" is not required in claim language) (quotation marks omitted). What's more, "[t]he law is clear that a court need not, and indeed may not, construe terms of degree to give them greater precision, absent a standard for imposing a more precise construction in the specification." *Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1081 (N.D. Cal. 2013) (citing *Verve LLC*, 311 F.3d at 1120 and *Ecolab, Inc.*, 264 F.3d at 1367). No such standard exists here. Indeed, there is presumably a good reason why the patents state that the belt path is "proximate" the intersection of the seat and backrest and not "at" the intersection. This the Court will not disturb so long as, when read in the entirety of the patent language, a term satisfies the requirements of 35 U.S.C. § 112.

On that point, the Court finds that "proximate an intersection of the backrest portion and seat portion" cannot, at this preliminary stage, be considered indefinite. Key to this finding—in addition to the observation that the figures in the specification do not illustrate indefiniteness, and rather, taken together, indicate a belt path that is indeed very near the intersection of the seat and backrest portions of the seat base in nearly all embodiments—is that a person of ordinary skill in the art would understand that in the forward-facing orientation, the forces exerted on the seat would require the second belt path to be located either at the intersection, or very near it. As

Britax points out, taken in its entirety, the patent language sets an objective lower limit on how near the second belt path may be to the intersection: "at" the intersection. Britax Moving Brief at 22. It also sets an objective upper limit, which is a proximity that would safely secure the seat, taking into account a specific embodiment's particular characteristics. *Id*. While the distance from the "intersection" may differ slightly between embodiments, there should be no embodiment in which the belt path would not be "proximate" the intersection, based purely on the forces at play. Knowledge of which a person of ordinary skill in the art would possess. *See Riddell, Inc. v. Kranos Corp.*, No. 16-CV-4496, 2017 WL 2264347, at *12 (N.D. Ill. May 24, 2017) (concluding that "the term 'region,' when combined with" descriptors such as "front, crown, and side, etc.," "is sufficient to permit one skilled in the art to understand with reasonable certainty what the claim language references"). Therefore, as in the context of "substantially adjacent," an objective baseline can be discerned based upon what can be seen by the "normal human eye" of a person of ordinary skill in the art in the context of the purpose of the invention.[35] *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1378 (Fed. Cir. 2017). *See Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp. 2d 747, 751, 760 (E.D. Tex. 2013) (finding that "the term 'approximately' in Claims 1–3, 5, 6, 9–11, and 13–15 of the '715 Patent

---

[35]    Additionally, as with use of "substantial," "adjacent," or "substantially adjacent," use of the term "proximate" does not *per se* connote indefiniteness. Indeed, courts have incorporated "proximate" into constructions. *See, e.g.*, *Choon's Design Inc. v. Tristar Prod., Inc.*, No. 14-10848, 2018 WL 632107, at *8 (E.D. Mich. Jan. 30, 2018) ("The Court construes 'clip including inward facing ends' to mean 'connector with the terminal portions proximate an opening.'"); *Clerisy Corp. v. Airware Holdings, Inc.*, No. CV 12-2110, 2013 WL 3833064, at *10 (D. Ariz. July 24, 2013) ("[T]he Court will construe the function as 'attaching the vehicle to the skin proximate an inhalation flow path.'"), *aff'd*, 578 F. App'x 984 (Fed. Cir. 2014). One court, in construing a term as, in part, a "first surface proximate an outer surface," recently explained that "[w]hat the line is between proximate and not-proximate is a question for the jury." *Ironburg Inventions Ltd. v. Collective Minds Gaming Co.*, No. 1:16-CV-4110, 2018 WL 2999615, at *7 (N.D. Ga. June 15, 2018).

is anchored by the disclosure of the operation of the purported invention" and further finding that, "although the term 'approximately' include[s] a subjective element, its scope does not depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention[; i]nstead, the use of 'approximately' must be read in the context of reducing pixel light shadowing, as disclosed in the specification").

For all of the above reasons, the Court declines to give the term "proximate an intersection of the backrest portion and the seat portion" any construction beyond its plain and ordinary meaning. *See Becon Med., Ltd. v. Bartlett*, No. CV 18-4169, 2019 WL 3996619, at *4 (E.D. Pa. Aug. 23, 2019) (finding additional construction "would only introduce confusion and ambiguity into a clear and unambiguous phrase" (*quoting Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 38 F. Supp. 3d 589, 608 (E.D. Pa. 2014))); *CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, No. CV 12-1701, 2014 WL 7205657, at *9 (D. Del. Dec. 17, 2014) (finding no construction to be necessary where a claim term "uses ordinary English words, which may be given their plain and ordinary meaning"); *Vapor Point LLC v. Moorhead*, No. 4:11-CV-4639, 2013 WL 11275459, at *24 (S.D. Tex. Dec. 18, 2013) ("In cases where the ordinary meaning of the claim term is readily apparent even to a lay judge, the court need not go further into intrinsic or extrinsic evidence." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005))). Nor can the Court state that the term, at this stage, warrants a finding of indefiniteness. *See Vapor Point LLC*, 2013 WL 11275459, at *24 (engaging in preliminary indefiniteness inquiry during claim construction and "find[ing] that 'a quantity' is not indefinite at this stage").

The next claim term, "proximate an intermediate region of the seat portion," used in claim 6 of the '074 patent, describes a child seat "wherein the first belt path is defined between

the tensioning mechanism and the seat base at a position **proximate an intermediate region of the seat portion.**"  This term is also used in the specification as follows:

> In some embodiments, first belt path may be defined between the tensioning mechanism and the seat base at a position **proximate an intermediate region of the seat portion.** The second belt path may be defined between the tensioning mechanism and the seat base at a position proximate an intersection of the seat portion and backrest portion of the seat base.

'074 patent, column 2 lines 12-18; '504 patent, column 2, lines 18-26.

> The first belt path 340 may be defined approximately across the seat portion 310 of the seat base 305, such that the first belt path 340 lies **proximate an intermediate region of the seat portion** 310. The intermediate region of the seat portion, shown where the first belt path 340 crosses the seat portion 310 in FIG. 14, may be located in between a front edge of the seat portion 310 and proximate an intersection of the backrest portion 315 and the seat portion 310, as depicted.

'074 patent, column 16 lines 59-67; '504 patent, column 16 line 65 – column 17 line  6.

> [T]he first belt path 340 may be defined as an approximately linear path across the seat portion 310 of the seat base 305 such that the first belt path 340 lies **proximate an intermediate region of the seat portion** 310, and the second belt path 335 may be defined as an approximately linear path proximate the intersection of the backrest portion 315 and the seat portion 310 of the seat base 305.

'074 patent, column 18 lines 19-26; '504 patent, column 18 lines 24-31.

As in the context of "proximate an intersection of the backrest portion and the seat portion,"  the Court finds the use here of "proximate" and "intermediate" is not improper *per se*, and, to the contrary, a person of ordinary skill in the art would understand with reasonable certainty where the first belt path would have to run in order for the child seat to operate effectively.  *See Advanced Aerospace Techs., Inc. v. United States*, 124 Fed. Cl. 282, 297 (2015) ("The court . . . should not impose a level of precision that exceeds the definiteness required of valid patents."); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014) ("The definiteness requirement . . . mandates clarity, while recognizing that absolute precision is unattainable.").  Similarly, the understanding and observation of a person of ordinary skill in the

art as to how a given embodiment of the car seat is supposed to work provides the objective limits of this term of degree. *See Sonix Tech. Co.*, 844 F.3d at 1378.

Additionally, the specification defines "intermediate region of the seat portion," explaining that it "may be located in between a front edge of the seat portion 310 and proximate an intersection of the backrest portion 315 and the seat portion 310, as depicted [in figure 14]." '074 patent, column 16 lines 65-67; '504 patent, column 17 line 4-6. Figure 14, reproduced above, "shows a top view of the child seat shown in FIG. 11 showing two belt paths in accordance with several example embodiments of the present invention." '074 patent, column 5 lines 49-51; '504 patent, column 5 lines 55-57. Figure 14 clearly depicts what the specification describes: the first belt path running *generally through the middle of the seat portion of the seat base*. In the Court's view, this is a common sense understanding of "proximate an intermediate region of the seat portion," one which a person of ordinary skill in the art would possess. As a result, the term does not require construction. *See Comcast Cable Commc'ns, LLC*, 38 F. Supp. 3d at 608; *CallWave Commc'ns, LLC*, 2014 WL 7205657, at *9; *Vapor Point LLC*, 2013 WL 11275459, at *24. Similarly, the Court finds, at this stage, the term does not warrant a finding of indefiniteness. *See Vapor Point LLC*, 2013 WL 11275459, at *24.

The Court next turns to the final "proximate at / to" terms: "proximate to the second belt path," "proximate to the first belt path," and "proximate to the seat portion." These terms appear in claim 13 of the '504 patent. This is the only place in either patent where these terms appear, and then only one time each.

The terms "proximate to the second belt path" and "proximate to the first belt path," appear in claim 13 as follows:

What is claimed is: (13) A child seat configured to be secured to a vehicle seat in both a rear-facing and a forward-facing orientation by a belt of the vehicle seat, the

child seat comprising: a seat base comprising a seat portion, a backrest portion, a first belt path generally at a middle of the seat portion in a forward and rearward direction, and a second belt path generally at an intersection of the seat and backrest portions, first and second lateral edges that protrude forwardly and upwardly from opposing sides of the backrest portion **proximate to the second belt path**, third and fourth lateral edges that protrude forwardly and upwardly from opposing sides of the seat portion **proximate to the first belt path** . . . .

At the outset, the Court must address an issue neither party squarely does: claim 13 of the '504 patent introduces two new components of the invention—the "third and fourth lateral edges" of the seat base—which do not appear in any other part of either patent. Perhaps more significant is that the portions of the child seat purportedly comprising these two new components are identified by the specification and other claim language as part of the "first and second edges" or "first and second lateral edge" of the seat base. *See, e.g.*, '074 patent, column 15 lines 22-26; '504 patent, column 15 lines 28-32 ("[T]he child seat may include a seat base 305, which includes a seat portion 310 and a backrest portion 315. In some embodiments, the seat base 305 may further define a first edge 320 and a second edge 325 *along the sides of the seat portion* 310 . . . .") (emphasis added); *see also* '074 patent, claim 1. The "first and second lateral edges" in claim 13 of the '504 patent then necessarily define a different, or rather, more limited, part of the seat, compared to the "first and second" edges as defined in other parts of the patents. That is, the "first and second lateral edges" in claim 13 of the '504 patent refer only to the edges of the seat base protruding out from the "backrest portion;" "first and second" edges as used elsewhere refer to the entirety of the seat base's edges, whether protruding from the seat portion *or* the backrest portion of the seat base.

Courts construing patent claims presume that "the same phrase in different claims of the same patent should have the same meaning," and this presumption "is a strong one, overcome only if 'it is clear' that the same phrase has different meanings in different claims." *In re Varma*,

816 F.3d 1352, 1363 (Fed. Cir. 2016) (quoting *Fin Control Sys. Pty, Ltd. v. OAM, Inc.,* 265 F.3d 1311, 1318 (Fed. Cir. 2001)). Here, however, it is clear from the language of claim 13 of the '504 patent that the four lateral edges of the seat base defined therein are different from "lateral edges" as used elsewhere in the patents.[36] The Court will therefore assign them different meaning, recognizing that "claim drafters can [ ] use different terms to define the exact same subject matter." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). The Court next turns to addressing the purported dispute as to "proximate to the second belt path" and "proximate to the first belt path."

Nuna alleges that the parties dispute *what* claim 13 is describing as "proximate to" a given belt path.[37] Nuna reads the claim language as describing the protrusion of the lateral edges of the seat base as proximate to a given belt path, such that the "*first and second lateral edges* [ ] protrude forwardly and upwardly from opposing sides of the backrest portion **proximate to the second belt path**," and the "*third and fourth lateral edges* [ ] protrude forwardly and upwardly from the opposing sides of the seat portion **proximate to the first belt path**." Nuna. Resp. Brief at 18. Nuna alleges that Britax, on the other hand, is reading the "proximate to" language as locating not the protrusion of the lateral edges with respect to the belt path, but rather the "backrest portion" and "seat portion" of the seat base with respect to a belt path, such that the

---

[36]     The same can be said of the third and fourth "positions" of the pivot structure in claim 13 of the '504 patent, addressed below. These "positions" do not appear in any other location in either patent; indeed, the "tensioning mechanism" is described as having only a first and second position elsewhere in the patents.

[37]     Nuna contends as follows: "Britax's argument as to why it views these terms as definite underscores the uncertainty associated with these claims. Not only do the claims fail to provide an objective boundary as to what is 'proximate,' as discussed in Nuna's opening brief, but also the parties disagree as to what must be proximate in the first place." Nuna Resp. Brief at 17.

"*backrest portion*" is "proximate to the second belt path," and the "*seat portion*" is "proximate to the first belt path." *See id.*

First, the purported dispute makes clear that the meaning of "proximate to the first belt path" and "proximate to the second belt path"—the limited terms Nuna has asked the Court to find indefinite—are themselves understood by each party. While Nuna claims they dispute *what* is "proximate to" either belt path—that is, which object is being located by the word "proximate"—their respective arguments illustrate that they understand for something to be "proximate to" a belt path, it must be "near" that belt path. And this is the common-sense way to understand the phrase "object X is proximate to object Y." Because the claim terms themselves have a common-sense understanding, no construction is necessary. *See CallWave Commc'ns, LLC*, 2014 WL 7205657, at *9; *Vapor Point LLC*, 2013 WL 11275459, at *24.

However, more fundamentally, the Court does not see an actual dispute, as Nuna contends, with respect to the more comprehensive phrase of claim 13 of the '504 patent: a seat base comprising "**first and second lateral edges that protrude forwardly and upwardly from opposing sides of the backrest portion proximate to the second belt path**," and "**third and fourth lateral edges that protrude forwardly and upwardly from the opposing sides of the seat portion proximate to the first belt path**." First, the Court finds Nuna's reading of claim 13 as it pertains to the lateral edges—that they protrude from opposing sides of the backrest or seat portion of the seat base near either the first or second belt path—to be correct. Critically, Britax does not appear to contest this. In its own words, Britax states as follows: "[t]he first and second lateral edges are located near the second belt path on opposite sides of the backrest portion, and the third and fourth lateral edges are located near the first belt path on opposite sides of the seat portion." Britax Resp. Brief at 29. Moreover, even if Nuna's characterization of

Britax's argument is accurate, it is not incorrect, nor does it conflict with the plain reading of the claim language as identified by Nuna and affirmed by the Court, to state that the "seat portion" is "proximate to the first belt path," and the "backrest portion" is "proximate to the second belt path."

Because the plain and ordinary meaning of these non-technical terms is apparent, the Court declines to give them a construction beyond this plan and ordinary meaning. *See Comcast Cable Commc'ns, LLC*, 38 F. Supp. 3d at 608; *CallWave Commc'ns, LLC*, 2014 WL 7205657, at *9; *Vapor Point LLC*, 2013 WL 11275459, at *24.

In the absence of a genuine dispute as to the meaning of the claim term, Nuna's argument for indefiniteness here is the same as its argument for indefiniteness of the other terms of degree. For reasons discussed at length previously, the Court does not find that, at this time, the claim terms "proximate to the first belt path" and "proximate to the second belt path" are indefinite. *See Sonix Tech. Co.*, 844 F.3d at 1378.

The claim term "proximate to the seat portion" is the final "proximate to / at" term that Nuna claims is indefinite. Claim 13 of the '504 patent provides that the child seat is comprised of a

> pivot structure having a second pivot portion comprising a third lateral edge member and a fourth lateral edge member, the third and fourth lateral edge members moving between a third position **proximate to the seat portion** and a fourth position at least partly displaced from the seat portion in order to enable the first belt path to receive the belt.

Nuna states that this term "again fails to address the critical issue: how close to the seat portion is considered 'proximate.'" Nuna Resp. Brief at 19. Britax argues a person of ordinary skill in the art "would understand that the pivot structure must be substantially flush with the base of the seat so that the child is comfortable. To function as a child seat, the seat must allow the child to

sit on the surface of the seat comfortably and safely. This would require that the pivot structure is proximate to the base of the seat." Britax Resp. Brief at 29.

In the Court's view, a person of ordinary skill in the art would understand that the pivot structure in the "third" position would need to have third and fourth lateral edge members that were sufficiently flush with the seat for the seat to comfortably hold a child. Like the other challenged terms, the objective baseline as to "proximate" in this context would be known to a person of ordinary skill in the art based on the specific embodiment of the child seat and that embodiment's ability to do what it was designed to do. Therefore, a construction beyond the ordinary meaning of "proximate to the seat portion" is unwarranted, and, similarly, the Court does not find the term to be indefinite at this time. *See Sonix Tech. Co*., 844 F.3d at 1378; *Comcast Cable Commc'ns, LLC,* 38 F. Supp. 3d at 608; *CallWave Commc'ns, LLC*, 2014 WL 7205657, at *9; *Vapor Point LLC*, 2013 WL 11275459, at *24.

### c.      Claim terms: "generally at" terms

The last set of claim terms challenged by Nuna as indefinite are the terms "generally at an intersection of the seat and backrest portions," which appears in claims 1, 5, 9, and 13 of the '504 patent, and "generally at a middle of the seat portion in a forward and rearward facing direction," which appear in the same claims. Here, Nuna's challenge rests on the same arguments as their challenge to the term "proximate an intersection of the backrest portion and seat portion," and "proximate an intermediate region of the seat portion," respectively. *See, e.g*., Nuna Moving Brief at 35-37. Each of these terms is used to describe the relative location of either the first or second belt path. Because use of the terms and the basis for Nuna's challenge are nearly identical the use of and challenge to the terms "proximate an intersection of the backrest portion and seat portion" and "proximate an intermediate region of the seat portion," the Court rejects

Nuna's arguments for the reasons set forth previously. These terms have plain and ordinary meanings ascertainable to a person of ordinary skill in the art. They therefore require no construction beyond their ordinary meaning. Similarly, the Court does not find, at this time, that they are indefinite.

## VI.    CONCLUSION

For the reasons set forth herein, the Court adopts the joint proposed construction of the claim term "sitting surface," as well as Britax's proposed construction of the claim terms "proximal end" and "distal end." For the remainder of the claim terms, the Court finds no construction is warranted beyond the terms' plain and ordinary meanings, which would be ascertainable to a person of ordinary skill in the art. Moreover, the Court declines at this time to find as indefinite the terms of degree challenged by Nuna. Nuna may reassert their challenge to these terms based on indefiniteness at the close of discovery by way of a motion for summary judgment.

An Order follows this Opinion.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge